IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | **Criminal No. SAG-15-560** |
| | * | |
| **RICKY TOLSON,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Ricky Tolson, who is presently in Bureau of Prisons ("BOP") custody at FCI Butner Medium I, has filed an Emergency Motion for Compassionate Release ("the Motion"), ECF 20, along with a memorandum and a number of exhibits. ECF 22. The Government filed an opposition to the Motion, ECF 25, and Tolson filed a reply, ECF 27. For the reasons that follow, Tolson's Motion is DENIED.

**I.      Factual and Procedural Background**

On November 6, 2015, Tolson pled guilty to a criminal information charging him with one count of Hobbs Act robbery. ECF 1, 9. The statement of facts Tolson agreed to in his plea agreement included the commission of eight Hobbs Act robberies between June 7, 2015 and June 24, 2015. ECF 9 at 9-11. During each robbery, Tolson implied to the victims that he had a firearm. *Id.*

The parties agreed that the appropriate sentence was 180 months (fifteen years) in prison. United States District Judge J. Frederick Motz imposed that sentence on January 5, 2016. Tolson, who has been incarcerated since June 25, 2015 (or just over five years) now seeks to have his sentence reduced, requesting release to home confinement in light of the COVID-19 pandemic.

1

## II.     Legal Standards

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

## III.    Analysis

The Government does not contest that Tolson adequately exhausted his administrative remedies, and is therefore entitled to file this Motion. ECF 25 at 10-11. The parties dispute, however, whether Tolson's medical conditions meet his burden to show an "extraordinary and compelling reason [ ]" rendering him eligible for consideration for compassionate release. This Court believes that, at best, Tolson has made a marginal showing of an extraordinary and

compelling reason. But even if he is found to have demonstrated such a reason, Tolson would be ineligible for release because he presents a continuing danger to community safety, and because the 18 U.S.C. § 3553(a) factors weigh against a sentencing reduction.

Beginning with the threshold issue, Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" exist, as determined by the BOP. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."].

As several courts in this District have recognized, "[t]he First Step Act is in tension with the [Sentencing] Commission's Policy Statement," because the "catch-all" provision of § 1B1.13 cmt. n.1(D) only allows the BOP to determine what "other reasons" constitute "extraordinary and compelling" ones for release. *United States v. Gutman*, Crim. No. RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020); *see also, e.g.*, *Wise v. United States*, Crim. No. ELH-18-72, 2020 WL 2614816, at *4-6 (D. Md. May 22, 2020) (describing how § 1B1.13 "is outdated in light of the [First Step Act]," and collecting cases holding similarly); *United States v. Decator*, 452 F. Supp. 3d 320, 323 (D. Md. 2020) ("The Policy Statement in § 1B1.13, however, is at least partially inconsistent with the First Step Act."), appeal docketed, No. 20-6877 (4th Cir. June 15,

2020). For the reasons elucidated by these courts, and others across the country, this Court concurs that it "may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)." *United States v. Redd*, 444 F. Supp. 3d 717, 726-27 (E.D. Va. 2020); *see also United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Haynes*, No. 93 CR 1043, 2020 WL 1941478, at *14 E.D.N.Y. Apr. 22, 2020 (collecting cases); *Decator*, 452 F. Supp. 3d at 323; *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[D]ependence on the BOP to determine the existence of an extraordinary and compelling reason ... is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act.").

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[ ]" permitting the Court to consider further an inmate's release under the First Step Act. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2. In this Court's view, the case law demonstrates that, under certain circumstances, the heightened risk of exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

The fact that COVID-19 is present in a correctional facility, however, is not alone sufficient to qualify an inmate for compassionate release. *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the

present pandemic, without more, is not tantamount to a 'get out of jail free' card."). Instead, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), appeal filed, No. 20-1523 (6th Cir. June 8, 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2046381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

The analysis under the first prong of this two-part inquiry is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19. The CDC first examines the risk presented to a given individual based on age. People Who Are at Increased Risk for Severe Illness: Older Adults, CTRS. FOR DISEASE CONTROL & PREVENTION (last updated September 11, 2020). Generally, "[a]s you get older, your risk for severe illness from COVID-19 increases." *Id.* The age group at the highest risk, however, is those over the age of 65, as 8 out of 10 COVID-19 deaths reported in the United States are individuals in that group. *Id.*

Tolson is forty-two. *See, e.g.*, ECF 22-7 at 51 (listing his date of birth). The CDC's data therefore places him in a low risk group of persons between ages 18-49. *See* CTRS. FOR DISEASE CONTROL & PREVENTION: COVIDVIEW (OCT. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html.

Next, the CDC discusses an individual's increased risk for severe illness from COVID-19 based on his underlying medical conditions.[1] From here, the CDC distinguishes between those conditions which **do** create an increased risk of severe illness, and those which **might** create an increased risk. People at Increased Risk: People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL & PREVENTION, https://tinyurl.com/y9chuzkm, (last updated Oct. 6, 2020)]. Those who **are** at an increased risk for severe illness are those who have:

- Cancer
- Chronic kidney disease;
- COPD (chronic obstructive pulmonary disease);
- A compromised immune system resulting from a "solid organ transplant";
- Obesity, defined as a BMI over 30;
- "Serious heart conditions," including heart failure, coronary artery disease, or cardiomyopathies;
- Sickle cell disease;
- Smoking; and
- Type 2 diabetes mellitus

*Id.* On the other hand, the following conditions **might** cause an increased risk for severe illness:

- Moderate to severe asthma
- Cerebrovascular disease
- Cystic fibrosis
- Hypertension
- A compromised immune system from causes other than a solid organ transplant;
- Neurologic conditions, "such as dementia";
- Liver disease
- Pregnancy

---

[1] Of course, the added risk from underlying medical conditions is considered in tandem with individuals' age-related risks. An older person with underlying medical conditions is at greater overall risk than a younger person with the same condition.

- Pulmonary fibrosis
- Overweight, defined as a BMI over 25
- Thalassemia
- Type 1 diabetes mellitus

*Id.*

A careful review of Tolson's medical records reveals that his only condition that, according to the CDC, definitively elevates his risk is his history of smoking. He claims prior diagnoses of asthma and hypertension. His medical records contain contradictory statements about whether he has been diagnosed with asthma, but there is no indication that he has pursued regular treatment or that any asthma he has would be described as "moderate to severe." The record does clearly reflect a diagnosis of hypertension, and a prescription for hydrochlorothiazide. However, Tolson has refused to take the medication as prescribed, and it was discontinued. Despite the medical non-compliance, Tolson's recent blood pressure, while generally elevated, has been often outside the hypertensive range. Finally, Tolson has recently complained of ongoing breathing issues resulting from a COVID-19 diagnosis apparently made on the basis of earlier clinical symptoms, without formal testing. His recent clinical records, however, do not corroborate his ongoing subjective complaints with any objective medical findings suggesting a breathing impairment or other lingering symptoms.

In addition to his medical conditions, Tolson contends that he has an especially elevated risk of contracting COVID-19 at FCI Butner Medium I. It is true that, in the early stages of the pandemic, that institution was one of the BOP's hardest hit facilities. Since March, more than 191 of its inmates have tested positive for COVID-19, and nine have died from complications of infection. The conditions at FCI Butner Medium I, however, have dramatically improved over recent months. COVID-19 Cases, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited November 3, 2020). Presently, no inmates at the facility, and just one staff member,

7

are diagnosed as COVID-positive. While it is clear that there remains some viral presence at the facility despite the BOP's extensive mitigation efforts, at this point, the virus appears well-contained. *Id.*

The Court does not wish to downplay the seriousness of the pandemic and its risks, even to those who are relatively young and healthy. That said, as noted above, COVID-19's severity is not a blanket justification for release. The intersecting interests of justice and public health require a differentiation between prisoners who are truly *high* risk—by assessing a combination of age, health, and prison conditions—and those who face a lower amount of risk similar to most others, whether incarcerated or otherwise. Considering Tolson's age, his relative good health, and the current conditions within his facility, the Court is not persuaded that Tolson's current incarcerative setting places him at greater risk of contracting, or suffering severe complications from, COVID-19. However, as described below, even if this Court were to assume *arguendo* that he had established the extraordinary and compelling reason necessary for this Court to continue its evaluation under the First Step Act, the remaining two prongs of the inquiry would not permit his release.

The Court next considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, which deny relief to an inmate posing "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. Initially, this Court recognizes and commends Tolson for the efforts he has made at rehabilitation and self-improvement during his incarceration to date. He has participated in a wide variety of educational and training courses offered by BOP, has enrolled in college courses, and has obtained several positions of trust within the facility, including his roles as a medical inmate companion and a suicide cadre.

8

Beyond that, however, his record in prison has been decidedly mixed. While this Court does not discount his accomplishments, there remains an important area of concern: Tolson's ability to follow instructions given by persons of authority, which is critical to successful compliance with the terms of supervised release. Tolson's prison disciplinary records, and his medical records, reflect a seemingly increasing lack of compliance with instructions from staff members and medical personnel. This concern, unfortunately, comports with Tolson's previous criminal behavior resulting in his incarceration. Just over five years ago, Tolson committed eight robberies in a span of just three weeks, during which he implied that he had a firearm and caused grave fear in his victims. At the time he committed the robberies, Tolson was under court supervision for another conviction, again demonstrating an—in this case extreme—unwillingness to comply with supervisory terms and instructions. Ultimately, Tolson's continued inability, or unwillingness, to comport with instructions from persons of authority—both during his string of robberies while under court supervision and throughout his time in prison—leads this Court to the conclusion that Tolson would pose a continuing danger to the community if released, because he could not be trusted to comply with the instructions of his supervising officers, to the extent he might disagree.

Finally, in order to grant compassionate release, this Court would have to be persuaded that a sentencing reduction is warranted after considering the factors in 18 U.S.C. § 3553(a). Those factors are:

> (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) To afford adequate deterrence to criminal conduct;
> (C) To protect the public from further crimes of the defendant; and
> (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

9

Those factors weigh against the requested reduction. The criminal conduct, as described above, was extremely serious, and was committed while Tolson was on probation to another court. Tolson received a federal sentence that was agreed to by both the parties—15 years. To reduce that sentence to less than six years would neither reflect the seriousness of his offenses nor afford adequate deterrence to Tolson or to others. The original sentence best provides just punishment for the offenses, and will permit Tolson to further avail himself of the educational and vocational training available in the Bureau of Prisons, while he works on comporting himself with the directives of those in positions of authority.

For the reasons set forth herein, Tolson's Motion for Compassionate Release is DENIED. A separate Order will ISSUE.


DATED:  November 4, 2020                              /s/
                                                      Stephanie A. Gallagher
                                                      United States District Judge