IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | * |
| RICKY TOLSON, | *   Criminal No. SAG-15-0560 |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Ricky Tolson, who is presently in Bureau of Prisons' ("BOP") custody serving a sentence of 180 months, filed a *pro se* Renewed Motion for Compassionate Release on July 31, 2023. ECF 34. He supplemented his motion twice. ECF 36, 49. This Court appointed counsel to represent Mr. Tolson, and both Mr. Tolson and his counsel asked this Court to delay adjudication of the motion until Mr. Tolson completed the Residential Drug Abuse Treatment Program ("RDAP") through the BOP. ECF 36, 37. Once Mr. Tolson completed RDAP in the fall of 2024, this Court ordered the Government to file its response to the renewed motion, and the Government did so, ECF 42, 53. Mr. Tolson filed a belated *pro se* reply. ECF 55. This Court has considered the filings and determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Mr. Tolson's notion must be denied.[1]

I.   **Factual Background**

On January 5, 2016, after considering a plea agreement and joint sentencing recommendation from the parties, United States District Judge J. Frederick Motz sentenced Mr.

---

[1] The Government also filed a motion to unseal certain records, ECF 43, and a motion to seal exhibits attached to its motion, ECF 52. Those two unopposed motions will be granted.

1

Tolson to 180 months or fifteen years of incarceration for eight Hobbs Act robberies he committed. ECF 15. The agreed sentence resolved not only Mr. Tolson's federal charges but also violations of supervision he had pending in three different counties. ECF 9.

Mr. Tolson has served almost ten years of the imposed sentence and now asks this Court to reduce his sentence by 36–48 months via this motion. ECF 34. His present anticipated release date is July 2, 2028.

## II.     Analysis

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023). But as part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239–41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier.[2] *Id.* Once a motion is for compassionate release is properly filed, the Court engages in a two-step process: determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release and considering whether the

---

[2] The Government does not contest that this administrative prerequisite has been satisfied. ECF 68 at 4.

`

factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

The Fourth Circuit has held that "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020). The relevant policy statement is U.S.S.G. § 1B1.13, entitled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" (the "Policy Statement"). The Sentencing Commission recently amended that Policy Statement, with the amendments taking effect on November 1, 2023. Of course, Mr. Tolson filed his motions prior to that date, allowing this Court to review his motions under the pre-amendment version of the U.S.S.G. *See, e.g.*, *United States v. Curtin*, 2023 WL 8258025, at *2 (D. Md. Nov. 29, 2023) (noting that for a motion filed "before the effective date" of the amended Policy Statement, the Court applies the "version of the manual in effect at the time of filing.").

Before the November, 2023 amendments, the Policy Statement began with the phrase: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment" for certain enumerated reasons. U.S.S.G. § 1B1.13 (2021). In *United States v. McCoy*, 781 F.3d 271 (2020), the Fourth Circuit determined that the language in the Policy Statement did not encompass motions filed by defendants themselves, meaning that in connection with such motions district courts were "empowered…to consider any extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284.

The November 1, 2023 amendments changed the beginning of the Policy Statement to read: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment" for certain specified

3

reasons. U.S.S.G. § 1B1.13 (2023) (emphasis added). Thus, the Policy Statement is now expressly applicable to defendant-filed motions, like Mr. Tolson's.

    a.    **Extraordinary and Compelling Circumstances**

To meet the first element for consideration under the First Step Act, then, Mr. Tolson needs to demonstrate extraordinary and compelling circumstances justifying consideration of compassionate release. He argues a number of reasons he contends amount to extraordinary and compelling circumstances: (1) his changed family circumstances, including his father living alone following his mother's death and his concerns that his daughter is reliant on a guidance counselor; (2) his efforts at rehabilitation, including his participation in a gang disassociation program, the RDAP, and his efforts to improve his dealings with authority figures; and (3) a comparison between the national average sentence for murder and the sentence he received in this case, leading him to conclude that his sentence is excessive.

This Court finds that, under either the pre-amendment or post-amendment Policy Statements, Mr. Tolson has not demonstrated extraordinary and compelling circumstances justifying consideration of compassionate release at this juncture. Looking first at the post-amendment Policy Statement, none of the six paragraphs is applicable. Paragraph 3 addresses "family circumstances," but Mr. Tolson does not fulfill the requirements: a minor child's caregiver who has died or become incapacitated or another family member who is incapacitated and has no other available caregiver. Paragraph 6, governing "unusually long sentences," allows the court to consider "a change in the law" as an extraordinary and compelling reason, but again only under particularized circumstances: where "a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment" and where the change in law "would produce a gross disparity between the sentence being served and the sentence likely to be

imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). Mr. Tolson argues that his sentence is too long when compared to a twenty-year national average for murder offenses, but does not cite to any applicable "change in the law." Moreover, as an initial matter, he cannot establish that the sentence he received for eight robberies (plus resolution of three different pending state court proceedings) is "unusually long" by comparing it to the national average sentence for an entirely different crime.

Finally, this Court has considered Mr. Tolson's eligibility for relief under paragraph 5, which allows a defendant to demonstrate "extraordinary and compelling" circumstances where he "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)((5). Paragraphs 1 through 4 discuss terminal medical conditions or medical conditions permanently impacting a defendant's capacity for self-care, his age (if over 65), family circumstances where a defendant is the sole caregiver for a minor or incapacitated family member, and whether a defendant suffered abuse while incarcerated. Here, Mr. Tolson has not cited any circumstance or combination of circumstances that are similar in gravity to those described in paragraphs 1 through 4.

As noted above, however, Mr. Tolson is also eligible for consideration under the more liberal pre-amendment Policy Statement as interpreted by the Fourth Circuit in *McCoy,* which allows this Court to consider any reason, individually or in combination, as an extraordinary and compelling circumstance. Even under that broad standard, this Court does not find an extraordinary and compelling circumstance or circumstances here.

In conducting this analysis, this Court considers each of the reasons Mr. Tolson has asserted: his family circumstances, his efforts at rehabilitation (including efforts to improve his dealings with authority figures), and the comparison between his sentence and the average sentence for murder. Again, even had Mr. Tolson cited the average sentence for Hobbs Act robberies, his case would be distinguishable because his was not a typical robbery sentence — not only did he commit eight separate robberies, the agreed resolution of his case also resolved a number of open state court cases and violations for which Mr. Tolson could have received lengthy consecutive sentences. In fact, Mr. Tolson's defense counsel represented at his sentencing that Baltimore County only agreed to dismiss its state case against Mr. Tolson if his federal sentence met or exceeded 180 months. ECF 48 at 5. His counsel indicated that, "He was looking at significantly more punishment had the case stayed in state court." *Id.*

While this Court understands that Mr. Tolson's family has suffered a significant recent loss and misses his presence, the circumstances described align with general hardship occasioned by a person's lengthy incarceration and are not, to date, extraordinary and compelling. Mr. Tolson's minor daughter appears to be in the custody of her mother according to his Presentence Investigation Report, ECF 13 at 23, and her contact with a guidance counselor at school is neither unusual nor troubling. And Mr. Tolson has not established that his father has the degree of daily needs to amount to incapacitation, nor has he established that there is no other available caregiver.

Finally, Mr. Tolson claims that he has been effectively rehabilitated. He has been transferred to a lower security facility, has completed RDAP, and has disassociated himself from

a prison gang.³ He has volunteered as a medical inmate companion and has participated in a suicide risk observation program to help other inmates. He has provided a series of statements from correctional officers attesting to his good character and improved discipline, along with a multitude of certificates from programs he has completed. He also notes that he found himself having to take direction from other inmates who were sex offenders during his incarceration at USP Tucson, which he says speaks to his ability to comply instructions from a probation officer going forward. Overall, it appears that Mr. Tolson is on the right path and this Court commends him for his many accomplishments. This Court also notes, however, that his disciplinary record has not been spotless, even at his new lower-security facility where he sustained two relatively minor infractions in 2024. But even if this Court accepts that Mr. Tolson's record shows significant rehabilitation, Congress has specified that rehabilitation alone cannot be considered an extraordinary and compelling reason for release. 28 U.S.C. § 994(t). While it may be considered as one factor among several considered under § 3582(c)(1)(A), none of Mr. Tolson's other cited circumstances adds enough to the analysis to permit his rehabilitation to amount to an extraordinary and compelling reason.

      Ultimately, this Court has thoroughly considered Mr. Tolson's arguments about his family circumstances, his rehabilitation and disassociation from gang membership, and the length of his sentence and has determined that they are not, either individually or in totality, the extraordinary and compelling circumstances required for relief under § 3582(c)(1)(A).

---

³ Mr. Tolson cites to a case from the District of Montana in which the judge reduced a sentence in part because of the defendant's disassociation from gang membership. ECF 49 at 1. While this Court of course views such disassociation as a positive step towards a law-abiding life, to this Court's knowledge, there is no evidence that Mr. Tolson's offenses of conviction were gang-related. He simply committed a long series of single-defendant Hobbs Act robberies.

`

Accordingly, Mr. Tolson is presently ineligible for further consideration of compassionate release.

### III.    Conclusion

In conclusion, after considering all of the relevant factors, this Court concludes that, at this time, Mr. Tolson has not established an extraordinary and compelling reason to justify a reduction in his sentence. Accordingly, his Motion for Compassionate Release, ECF 34, is denied and the Government's motions to unseal certain records, ECF 43, and to seal exhibits, ECF 52 are granted.

A separate Order will issue.

DATED: March 28, 2025                                   /s/
                                                Stephanie A. Gallagher
                                                United States District Judge